**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONNA HOFLER,**

      **Plaintiff,**                          **No. 07-cv-1055**
                                                      **(GLS-DRH)**

           **v.**

**FAMILY OF WOODSTOCK, INC.,**

                        **Defendant.**
_____

**APPEARANCES:**

FOR PLAINTIFF:

DISABILITY ADVOCATES, INC.      NINA LOEWENSTEIN, ESQ.
5 Clinton Square                    CLIFF ZUCKER, ESQ.
Third Floor
Albany, NY 12207

FOR DEFENDANT:

ROEMER, WALLENS LAW FIRM    DIONNE A. WHEATLEY, ESQ.
13 Columbia Circle
Albany, NY 12203

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

     Currently before the court is defendant Family of Woodstock, Inc.'s

("Woodstock") motion for summary judgment (Dkt. No. 33), as well as

plaintiff Donna Hofler's ("Hofler") cross-motion for sanctions and to strike (Dkt. No. 48)  Following review of the briefs in support thereof and the record on the matter, the court denies Woodstock's motion and denies Hofler's motion.

## BACKGROUND

The following relevant facts are undisputed.  Woodstock is a non-profit corporation that provides services such as a telephone hotline, a walk-in center, homeless services, domestic violence resources, child care services and health related services for the Counties of Columbia, Greene, and Ulster, New York.  (*See* Plaintiff's Response to Defendant's Statement of Material Facts, Dkt. No. 49 at ¶ 1.)  Hofler, who has cerebral palsy which substantially limits her ability to walk, has been employed by Woodstock since 1983.  (*Id.* at ¶¶ 2 and 9.)

Hofler holds the Head of Day position and her responsibilities include training and supervising volunteers working for the program, monitoring the building's upkeep and maintenance, and ensuring that food packages are provided to clients.  (*Id.* at ¶ 11.)  Volunteers could assist in the performance of these tasks.  (*Id.*)  However, if there are no volunteers, it is ultimately the responsibility of the Head of Day to complete these tasks.

(*Id.* at ¶¶  39-42.)

At the beginning of her employment with Woodstock, Hofler used crutches.   However, due to an injury she suffered to her right knee in 2001, Hofler relied more on a wheelchair.  (*Id.* at ¶¶  13, 17, and 24.)  Prior to 2001, while using crutches, Hofler was able to access the food pantry at Woodstock and assist in preparing the food packages.  (*Id.* at ¶ 25.)  Since using a wheelchair, though, Hofler cannot access the food pantry.  (*Id.*) The food pantry, however, has two entrances and one, which Hofler could use with her wheelchair, is no longer available because food shelves block that entrance.  (*Id.*)  During the fall of 2005, citing, among other things, Hofler's safety and her inability to provide services to clients, Woodstock changed Hofler's schedule and assigned her to the morning shift and, as a result, considerably reduced Hofler's hours.  (*Id.* at ¶¶ 34-36.)  Hofler appealed this decision to the Personnel Committee of the Board of Directors, but it supported the decision to modify Hofler's work schedule.

Subsequently, Hofler filed this action against Woodstock claiming a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1212 and New York State Human Rights Law § 296.  Woodstock moved for summary judgment and Hofler opposed with a cross-motion for sanctions

and to strike certain affidavits.

## DISCUSSION

Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  To defeat a summary judgment motion, the nonmoving party must show sufficient evidence to create a genuine issue of material fact. *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004).  However, the court must draw all facts and inferences in the light most favorable to the plaintiff.  *LaTrieste Rest. and Cabaret Inc. v. Vill. of Port Chester,* 40 F.3d 587, 589 (2d Cir. 1994).

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual."  *Roberts v. Health Ass'n.,* 308 F.App'x. 568, 570 (2d Cir. 2009).  In the absence of evidence of direct discrimination, the court analyzes ADA claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973); *Fall v. N.Y. State United Teachers,* 289 F.App'x. 419, 420-21 (2d Cir. 2008).  Under this framework, a plaintiff bears the burden of establishing a prima facie case showing she (1) had a disability within the meaning of the ADA; (2) was qualified, with or without a reasonable

4

accommodation, to perform the essential job functions of the position in question; and (3) suffered an adverse employment action because of her disability. *Id.* The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions. *Id.* If the employer articulates such a reason, the burden returns to the employee to show the employer's justification is a pretext. *Id.*[1]

An individual is qualified if he satisfies the requisite skill, experience, education, and other job-related requirements, and can perform the essential job functions, with or without reasonable accommodation. *Adams v. Master Carvers of Jamestown, Ltd.,* 91 F.App'x. 718, 721 (2d Cir. 2004). Essential functions are the fundamental job duties but not the marginal functions of a particular job. *Shannon v. N.Y.C. Transit Auth.,* 332 F.3d 95, 100 (2d Cir. 2003). An employer has the burden of showing a particular job function is an essential function of the job. *Id.*

In this case, it is undisputed that cleaning and maintaining the building and preparing the food packets are essential functions of the job. (*See* Hofler's Declaration, Dkt. No. 46 at ¶ 8.) It is also undisputed that

---

[1]The court analyses disability discrimination claims under New York Human Rights Act using the same framework as claims brought under the ADA. *Id.*

ensuring sufficient coverage for a shift is an essential function of the job. (*Id.* at ¶ 15-16.)  In addition, it is undisputed that with respect to her cleaning duties, Hofler needs volunteers to help her with those responsibilities.  (*Id.* at ¶ 6.)  In fact, in her Charge of Discrimination, Hofler stated: "[w]ith respect to the maintenance issues, the issues that were raised were tasks I could not do even when I was on crutches."  (See Berg Affidavit's Ex. F, Dkt. No. 33-2.)  Woodstock contends, however, that Hofler has not always made sure she has a volunteer to assist her and at times Hofler worked alone and was unable to complete her work responsibilities. (*See* Woodstock's Brief at p. 2, Dkt. No. 34.)  With respect to preparing the food packets, Woodstock claims Hofler cannot perform this duty.  In her Charge of Discrimination, Hofler stated: "one of the client services that I cannot provide from my wheelchair is providing food from our food pantry." (See Berg Affidavit's Ex. F, Dkt. No. 33-2.)  Woodstock states the food packets cannot be prepared in advance because some clients may have particular dietary needs.

Hofler states that she does not need to personally perform the cleaning tasks because she supervises others that can do the job, i.e., volunteers.  However, her argument misses the mark because if volunteers

do not show up, the record indicates the job does not get done.  The record clearly indicates that the ultimate responsibility for cleaning belongs to the Head of Day or, in this case, Hofler.  Here, the record indicates the duties of cleaning and food preparation are essential functions of the job and they remain essential functions in spite of the fact that Woodstock allows volunteers to assist Hofler with those tasks.  "[A]n employer does not concede that a job function is non-essential simply by voluntarily assuming the limited burden associated with a temporary accommodation, nor thereby acknowledge that the burden associated with a permanent accommodation would not be unduly onerous."  *Rehrs v. Iams Co.,* 486 F.3d 353, 358 (8th Cir. 2007) (citations and internal quotation marks omitted).  "To find otherwise would unacceptably punish employers [for] doing more than the ADA requires, and might discourage such an undertaking on the part of employers."  *Id.*

Nevertheless, Hofler also contends that allowing her to remain on the afternoon shift with volunteers performing the cleaning and food preparation duties constitutes a reasonable accommodation.  Woodstock claims volunteers expressed dissatisfaction with having to perform strictly cleaning duties.  Hofler asserts such contention, as well as Woodstock's

7

contention that reliance on volunteer work to help Hofler is no longer possible, is pretextual.  As a result, Hofler has submitted several affidavits from volunteers who indicate they are willing to work with Hofler so that she can remain in the evening shift and, in fact, one affidavit– from a Head of Day– indicates she is willing to cover for Hofler when she needs it. Woodstock's constant use of and dependance on volunteers create a question of fact as to whether: (1) volunteers are a reasonable accommodation and Hofler could perform the essential functions of her job with such accommodation; (2) Woodstock's reason for moving Hofler to the day shift is a legitimate nondiscriminatory reason; and (3) Woodstock's reason is a pretext.

Woodstock also contends that, for her own safety, Hofler cannot be alone in the building.  Woodstock asserts Hofler has fallen several times at home, and that, in 2001, she fell at work injuring her knee and now requires the use of a wheelchair.  Since 2001, Hofler uses a live-in assistant to help her get to and from her work-site and to assist her in daily living activities. Based on this, since 2003, Woodstock has required that Hofler does not work alone and has a volunteer with her when she works.  However, the record indicates Hofler fell *only* once while she was at work and it was

8

when she used crutches.  The record does not indicate she has fallen at

the workplace with her wheelchair.  This evidence certainly puts into

question the likelihood that harm will occur.  Thus, the court agrees with

Hofler that, with respect to this issue, there is at least a question of fact.

Woodstock indicates that on <u>one</u> occasion Hofler took a considerable

amount of time to open the door for a staff member and a volunteer who

were locked out of the building.  However, the record does not indicate

that, other than this isolated incident, Hofler has repeated such conduct.

As to Woodstock's claim that Hofler cannot properly evacuate in the event

of an emergency, it is the court's view that such assertion is mere

speculation.  There is nothing in the record to indicate otherwise.

Having made these determinations, and viewing the facts in the light

most favorable to Hofler, the court finds there are genuine issues of

material fact and summary judgment is not warranted.  The court further

determines Hofler's cross-motion for sanctions under a theory of spoliation

is denied because nothing indicates Woodstock destroyed the evidence

with a culpable state of mind.  *Residential Funding Corp. v. Degeorge Fin.

Corp.,* 306 F.3d 99, 107 (2d Cir. 2002).  As to Hofler's request to strike

certain statements as hearsay, the court agrees with Woodstock that the

9

motion regarding the statements about the "lock-out incident" should be denied.  These statements are not being offered to indicate the amount of time that it took, as Hofler contends, but rather, they are offered to indicate that the incident occurred.  As to the statements concerning the cleanliness of the building, the court notes there is non-hearsay admissible evidence that provides support to Woodstock's assertions that cleanliness– when Hofler is not able to rely on help from volunteers– is an issue of concern. Accordingly, Hofler's motion to strike is denied.

The parties have now made additional requests.  Woodstock, in its response brief, asks the court to strike Hofler's Expert Declaration and Report contending, among other things, that it has legal conclusions. Hofler, in a letter, asked to strike Exhibit A of Ms. Cooper's Reply Affidavit. The court declines to address these requests at this time, but will permit the parties an opportunity to raise them in motions in limine before trial.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Woodstock's motion for summary judgment is **DENIED** and that Hofler's cross-motions for sanctions and to strike are **DENIED**; and it is further

**ORDERED** that the Clerk provide copies of this Decision and Order

10

to the parties.

**IT IS SO ORDERED.**

Albany, New York
Dated: July 15, 2009

_____
United States District Court Judge