**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONNA HOFLER,**

             **Plaintiff,**

        **v.**                                                    **1:07-CV-1055**

**FAMILY OF WOODSTOCK, INC.,**

             **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

## I.    INTRODUCTION

Plaintiff commenced this action against her employer, Family of Woodstock, Inc.,

claiming a violation of the Americans with Disabilities Act, Section 504 of the Rehabilitation

Act, and New York State Human Rights Law § 296.   Plaintiff alleged that Defendant

violated the anti-discrimination statutes by failing to provide a reasonable accommodation

and by removing her from the afternoon shift on account of her disabilities.  Plaintiff

sought: (1) a declaration that the reduction in Plaintiff's working hours violated the anti-

discrimination laws; (2) equitable relief; (3) lost wages and benefits; (4) compensatory and

punitive damages (5); and costs, disbursements and attorney fees.  After the Court

decided Defendant's motion for summary judgment and Plaintiff's cross-motion for

sanctions and to strike a document (all of which were denied), see 7/16/09 Dec. & Ord.,

1

dkt. # 61, the matter was placed on the trial calendar.  On the eve of the first scheduled

trial, the parties reported that a settlement had been reached.  See 4/23/10 Am. Jud.

Dismissing Action by Reason of Settl, dkt. # 81.  However, the parties thereafter reported

that the terms of the settlement could not be finalized and the matter was restored to the

trial calendar. See dkt. # 83-86.  After the first selected jury was excused due to

objectionable questioning during *voir dire,* see 2/16/11 Dec. & Ord., dkt. # 122, trial

commenced on February 17, 2011 and lasted five (5) days.  The matter was presented to

the jury on two theories: that the employer failed to provide a reasonable accommodation

to allow Plaintiff to remain on the afternoon/evening shift; and that the employer directly

discriminated against Plaintiff on account of her disability by moving her to an earlier shift.

The jury found for Defendant on Plaintiff's "reasonable accommodation" claim, and found

for Plaintiff on her "direct discrimination claim."  The jury awarded Plaintiff $85,000 in back

pay, $0 for non-pecuniary damages, and denied punitive damages.

For equitable relief, Plaintiff sought $449,037.52 in front pay, prejudgment interest

on the back pay award, and an order:

1.   Requiring Defendant to permit Plaintiff to work alone to the
      same extent that any other any other employee in her position
      is permitted to work alone.

2.   Requiring Defendant to permit Plaintiff to work on any shift to
      the same extent as any other employee in her position.

3.   Requiring Defendant to permit Plaintiff to fill in for vacancies by any
      other employee in her position.

4.   Requiring Defendant to remove the shelves and supplies which are a
      barrier to Plaintiff's access to the food pantry.

5.   Requiring Defendant to permit Plaintiff to apply for any other similar
      position shift that may become vacant on the same terms as any

other applicant.

6.   Such other relief as is just and proper.

Before the issues were decided, Defendant offered Plaintiff another position which she accepted, and she then sought $3,031.65 in front pay, together with the other relief. The Court awarded the $3,031.65 in front pay, prejudgment interest based on the rate of return on one-year Treasury bills ("T-bills") for the relevant time period, and granted only Request # 4 from her list, requiring Defendant to remove the shelves and supplies blocking the pre-existing wheel chair accessible entry to the food pantry.

Plaintiff now applies for attorneys' fees and costs, seeking $275,426.00 in attorneys' fees and $10,555.43 in costs.   Defendant has opposed the motion.

## II.   DISCUSSION

"The ADA provides that a district court 'in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001)(quoting 42 U.S.C. § 12205). This language is nearly identical to the analogous provision governing attorney's fees in employment discrimination cases litigated under Title VII of the Civil Rights Act of 1964, . . . . and we apply the same standard as under Title VII."   Id.   A prevailing party is a party who "obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought." Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res., 532 U.S. 598, 602 (2001).  Plaintiff is a prevailing party in this action.

Once a party proves she is the "prevailing party" she must then prove that her requested fee is reasonable. Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1996); see also

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  When calculating a reasonable fee, the

Court relies on the "presumptively reasonable fee" test derived from the "lodestar"

calculation. Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009).  The

presumptively reasonable fee test requires courts to "determin[e] the reasonable hourly

rate for each attorney and the reasonable number of hours expended, and multipl[y] the

two figures together to obtain a presumptively reasonable fee award." Porzig v. Dresdner,

Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 141 (2d Cir. 2007) (citations omitted). The

operative term is "reasonable."  In making such a determination, "the district court does

not play the role of an uniformed arbiter but may look to its own familiarity with the case

and its experience generally as well as to the evidentiary submissions and arguments of

the parties." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998)(citation omitted).

Courts also have wide discretion to adjust the fees upward or downward depending

on the circumstances. Hensley, 461 U.S. at 434.  While the lodestar is the "most useful

starting point" in determining a reasonable fee, it may be adjusted by considering a variety

of other factors. Hensley, 461 U.S. at 433.

> The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley, 461 U.S. at 430 n. 3.[1]

---

[1]Some of these factors, however, may have already been considered in the initial lodestar determination. Hensley, 461 U.S. at 434 n. 9

Thus, despite that there exists "a 'strong presumption' that the lodestar represents the 'reasonable' fee," City of Burlington v. Dague, 505 U.S. 557, 561 (1992)(citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)), adjustments may be made to the lodestar figure provided the party seeking such an adjustment meets its burden of establishing the reasonableness of the adjustment. See id. (citing Blum v. Stenson, 465 U.S. 886, 898(1984)).  Paramount in this adjustment process is consideration of the degree of success obtained by the fee applicant. Hensley, 461 U.S. at 436 (declaring the degree of success obtained to be "the most critical factor"); see LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 761-62 (2d Cir. 1998).  A fee applicant is not entitled to attorney's fees for time spent on unsuccessful claims, except to the extent that the failed claims were "intertwined" with the successful claims. LeBlanc-Sternberg, 143 F.3d at 762 (citing Hensley); see also Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996)(attorney's fees may be awarded for unsuccessful claim as well as successful ones where they are "'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories.'")(quoting Dominic v. Consolidated Edison Co., 822 F.2d 1249, 1259 (2d Cir. 1987)).

Further, the Supreme Court has held that "[w]here recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." Farrar, 506 U.S. at 114 (internal quotations omitted)(citation omitted). "Having considered the amount and nature of damages awarded, [a] court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, or multiplying the number of hours reasonably expended . . . by a reasonable hourly rate." Id. at 115

5

(ellipsis in original)(internal quotations and citations omitted).

### a.    Reasonable Hourly Rate

In considering the reasonableness of the hourly rate requested by the prevailing

party, the Court is presumed to "use [] the hourly rates employed by the district in which

the reviewing court sits." <u>Arbor Hill Concerned Citizens</u>, 493 F.3d at 120 (citing <u>In re</u>

<u>Agent Orange Products Liability Litigation</u>, 818 F.2d 226, 232 (2d Cir. 1987)).

> The reasonable hourly rate should be what a reasonable, paying client would
> be willing to pay, given that such a party wishes to spend the minimum
> necessary to litigate the case effectively.  This Circuit's "forum rule" generally
> requires use of the hourly rates employed in the district in which the
> reviewing court sits in calculating the presumptively reasonable fee.  Fees
> should not be awarded at higher out-of-district rates unless a reasonable
> client would have selected out-of-district counsel because doing so would
> likely produce a substantially better net result.

<u>Bergerson v. New York State Office of Mental Health</u>, 652 F.3d 277, 289-90 (2d Cir.

2011)(internal citations and quotation marks omitted)

Plaintiff's counsel request an hourly rate of $275.00 per hour, relying on this

Court's decision in <u>Scott v. Hand</u>, 2010 WL 1507016 (N.D.N.Y. April 15, 2010).  However,

<u>Scott</u> addressed an application to apply an "out-of-district" rate. <u>Id.</u> at * 2 (citing <u>Simmons</u>,

575 F.3d at 174).  Plaintiff has not established that a reasonable client would have

selected out-of-district counsel at a rate higher than that charged by counsel in the

Northern District to try this relatively routine discrimination case.  Moreover, the facts

establish that when Plaintiff hired her counsel, who are employed by the not-for-profit

organization Disabilities Advocates, Inc. and have their offices within the District, she

entered a retainer agreement providing that Disabilities Advocates, Inc. would advance all

reasonably necessary costs and disbursements in the action and would not require her to

6

pay any legal fees. It is doubtful that an out-of-district law firm commanding an hourly rate higher than a private law firm in this District would have offered such favorable retainer provisions. The Court finds that there is no basis to apply an "out-of-district" rate in this case.

While there are some cases in the Northern District that have applied an in-district rate in civil rights actions slightly above the $210 per hourly rate applied in the Northern District in the last several years, see Bergerson, 652 F.3d at 290 (citing cases), the Court finds that a reasonable, paying client would not be willing to pay an experienced attorney more than $210 per hour to handle this relatively routine case. See Bergerson, 652 F.3d at 290 (Title VII action, finding $210 an hour for experienced attorney "is located within the range of permissible decisions and does not rest on an erroneous view of the law.")(internal quotation marks and citation omitted); Van Echaute v. Law Office of Thomas Landis, Esq., 2011 WL 1302195, at *4 (N.D.N.Y. March 31, 2011)(apply $210 per hour for experienced attorney); Dotson v. City of Syracuse, 2011 WL 817499, at *28 (N.D.N.Y. March 3, 2011)(awarding $210 an hour in employment discrimination case, citing several cases for the same proposition); Picinich v. UPS, 2008 WL 1766746, at *4 (N.D.N.Y. Apr. 14, 2008) (allowing rate of $210 in employment discrimination case); see also Lore v. City of Syracuse, --- F.3d ----, 2012 WL 310839, at *38 (2d Cir. Feb. 2, 2012)("We cannot conclude that the district court's calculation of fees here, using the same analysis it would thereafter use in Bergerson, applying the same $210 hourly rate for the same attorney in the same type of case tried shortly before Bergerson, was an abuse of discretion.").  By the same reasoning, the Court does not find a basis to apply an hourly rate of less then $210 per hour for experienced attorneys, as Defendant argues.

Accordingly, the Court will apply the hourly rate of $210 per hour for Plaintiff's counsel Cliff Zucker and Nina Loewenstein,[2] both of whom are experienced attorneys.  Travel time will be compensated at a rate of one half the hourly legal fee rate.  <u>Dotson</u>, 2011 WL 817499, at *28.

### b.    Reasonable Hours

The fee applicant bears the burden of documenting the hours spent by counsel, and the reasonableness thereof.  <u>ACE Ltd. v. CIGNA Corp.</u>, 2001 WL 1286247, at *2 (S.D.N.Y. Oct 22, 2001).  "The 'reasonableness' of an attorney fee request is dependent, in part, on the amount in controversy and the difficulty of the factual and legal issues involved." <u>Gillberg v. Shea</u>, 1996 WL 406682, at *5 (S.D.N.Y. May 31, 1996)(citing <u>N.A.S. Import, Corp. v. Clenson Enter., Inc.</u>, 968 F.2d 250, 254 (2d Cir. 1992)).  Further, "[i]f the court determines that certain claimed hours are 'excessive, redundant, or otherwise unnecessary,' the court should exclude those hours in its calculation of the lodestar." <u>Gierlinger</u>, 160 F.3d at 876 (<u>quoting</u> <u>Hensley</u>, 461 U.S. at 434). "[A] district court can exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours." <u>Luciano v. Olsten Corp.</u> 109 F.3d 111, 117 (2d Cir. 1997).  Thus, a fee request can be reduced as excessive where, for example, the fee applicant seeks reimbursement for several attorneys' work on the same or similar tasks. <u>See</u> <u>Lochren v. County of Suffolk</u>, 344 Fed. Appx. 706, 709 (2d Cir. 2009)(finding that district court did not abuse its discretion in applying "a 25% across-the-board

---

[2]In addition to Zucker and Loewenstein, attorneys Timothy Clune, Simeon Goldman, Amy Lowenstein, and Jennifer Monthie worked on this case, but Plaintiff asserts that "[i]n the exercise of billing judgment," she has decided not  to seek fees for these additional attorneys.  <u>See</u> Zuckerman Aff., ¶ 23.

reduction in fees because plaintiffs overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel."); ACE Ltd. v. CIGNA Corp., 2001 WL 1286247, at *2 (S.D.N.Y. Oct 22, 2001); General Electric Co. v. Compagnie Euralair, S.A., 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997)("It is well-recognized that when more lawyers than are necessary are assigned to a case, the level of duplication of efforts increases."); Gillberg, 1996 WL 406682, at *5 ("Obviously, more lawyers leads to more 'conference' time as well as to a certain amount of repetition or 'learning curve' billing which should not be compensable.").

Also,

> [w]here descriptions of work done are vague and ambiguous, the Court cannot assess the reasonableness of the entries. Thus, the fees for such work can be eliminated or reduced. "[M]ere characterization of the type of work done, without specifying the purpose and specific subject matter of the task", are insufficient. Descriptions of work such as "review of file", "review of documents" and "review of letters" are vague and do not permit a court to evaluate the reasonableness of the services.

Dodson, at *24 (internal citations omitted); see also Thomas v. U.S., 2011 WL 6057898, at * 7 (S.D.N.Y. Dec. 5, 2011)("While the use of block billing does not automatically compel an across-the board reduction, the difficulty created by [the] use of block billing . . . warrants such a reduction.").

As stated above, the Court will apply a rate of $210 per hour for legal work, and $105 per hour for travel time.  The original fee application sought 989.6 hours for legal work, and 23.9 hours for travel time.  After Defendant challenged many of the individual entries, Plaintiff's counsel conceded that entries for 30.55 hours should be deducted as

"data entry errors. " See Reply, p. 7.[3]  While this time will be deducted from the overall amount sought by Plaintiff (resulting in a request for 959.06 hours for legal work), what is more problematic for the Court is the sheer excessiveness of the time spent on all of the details of this case.  Examples of such, as pointed out by Defendant, are that Attorney Lowenstein spent 9 hours in drafting the 11-page Complaint and Attorney Zucker spent 4.2 hours editing the Complaint; Attorney Lowenstein spent 4.5 hours preparing for the Kortney deposition, 5.3 hours preparing for the Berg Deposition, and 15 hours preparing for both parts of the Cooper Deposition; the attorneys spent 26.5 hours preparing a motion to preclude Plaintiff's former treating psychologist; the attorneys spent 101.1 hours preparing opposition to Defendant's motion for summary judgment and drafting their cross-motion; Attorney Lowenstein spent 9 hours preparing for a pre-trial court conference; before the first scheduled trial, Attorney Lowenstein spent 22 hours drafting the direct examination questions of Plaintiff and spent 5.5 hours preparing Plaintiff to testify, and then, before the actual trial, spent another 13 hours preparing Plaintiff's direct examination; and both attorneys participated in the trial, resulting in large combined expenditures of time such as, for example, a combined total of 25 hours on February 23, 2011.  Even though the attorneys may have worked on separate aspects of the case, there appears to have been an unreasonable duplication of efforts throughout this case resulting in a basis to reduce the fee request.

Counsel have also engaged in what appears to be block billing, making it difficult if not impossible for the Court to assess the reasonableness of time claimed to have been

---

[3]This included an entry on February 8, 2011 by Attorney Zucker  for "trial strategy preparation with [co-counsel]" for 24 hours.

expended.  Examples of this can been seen in Attorney Zucker's records where he claims time on 1/22/09 for 4 hours to "draft expert affidavit," on 1/28/09 for 3 hours "drafting section of memo of law," and on 2/14/11 for 6 hours for "trial preparation last minute tasks."[4]  The vague details of the attorneys' activities also applies to much of the claimed travel.  Examples in Attorney Loewenstein's records are on 7/14/08 where she claims 2.3 hours for "travel to and from Cooper deposition," on 2/9/11 where she claims 2 hours for "travel to from client meeting," and in Attorney Zucker's records where, for example, he claims different amounts of time simply for "travel" on days during which the case was in trial.

Also impacting the Court's decision on this fee application is the fact that Plaintiff seeks to be reimbursed for more than $275,000.00 in legal expenses in the prosecution of a civil action which took less than five days to try and which, at least for Plaintiff's counsel who seem to deal extensively in this area of law, did not involve complex issues. Experienced counsel should have needed only a fraction of the time billed to complete the tasks at hand.  Moreover, law firms generally operate with a profit motive where  efficiency is the rule demanded in every case.  These firms do not have the luxury to address every detail of a case *ad infinitum*.  "The presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" Simmons, 575 F.3d at 174 (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d

---

[4]The Court notes that both attorneys seemed have switched their billing software after July 2009, with the new software records providing more detail as to their activities, but still in many instances not to the degree necessary to allow the Court to assess the reasonableness of the claimed activities.

110, 118 (2d Cir. 2007) opinion amended and superseded sub nom. <u>Arbor Hill Concerned</u>

<u>Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections</u>, 522

F.3d 182 (2d Cir. 2008) and holding modified by <u>Simmons</u>, 575 F.3d 170.  While Plaintiff's

counsels' situation might be unique and have allowed for an excessive total expenditure of

time by counsel (including from the four attorneys for whom Plaintiff does not seek

reimbursement, <u>see</u> fn. 2, *supra),* the Court finds that the time spent on the activities in

this case was unreasonable to the point of being excessive.

Further, the monetary recovery in this action of $88,031.65 pales in comparison to

the sought after fee of $275,426.00.  While the Court understands that more than money

was at stake in this matter and also that the amount of damages is not necessarily a

determinant of the appropriate fee to be awarded, Plaintiff had somewhat limited success

in this matter.  She did not prevail on her reasonable accommodation claim, she did not

recover for her claim for emotional distress damages, she did not recover punitive

damages, and she was awarded only a small portion of the equitable relief she sought.

On the claim for equitable relief, Plaintiff was denied those requests that would have, in

essence, allowed her to work alone.  Inasmuch as the primary focus of Plaintiff's case was

that she was discriminated against because the employer would not allow her to work

alone and therefore moved her to an earlier shift, the denial of much of the requested

equitable relief signifies that Plaintiff was only partially successful in this case.  This

provides another basis to reduce the fee.  <u>See</u> <u>Hensley</u>, 461 U.S. at 436-37 (The Court

"may attempt to identify specific hours that should be eliminated, or it may simply reduce

the award to account for limited success.").

Based on a careful review of the parties' submissions, the Court's knowledge of the

file, motions, trial, and all of the considerations outlined above, the Court will apply an across-the-board reduction of 50% in attorney time.  Thus, attorney legal time is reduced to 478.03 hours.  At a rate of $210.00 per hour, this equates to a fee of $100,386.30. Attorney travel time is reduced to 11.95 hours that, at a rate of $105.00 per hour, equates to a fee of $1,254.75.  Consequently, Plaintiff is entitled to recover attorneys fees in the amount of $101,641.05.

### c.    Costs

"[A]ttorney's fees awards [may also] include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg, 143 F.3d at 763 (internal citations and quotations omitted); Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987). "Such expenses charged to clients may include express mail, long distance telephone, local travel, and messenger services." Sulkowska v. City of New York, 170 F. Supp.2d 359, 370 (S.D.N.Y. 2001).  In addition, attorney and witness travel expenses, if reasonable and incurred for purposes of the litigation, are recoverable. Hogan v. General Elec. Co., 144 F. Supp.2d 138, 143 (N.D.N.Y. 2001)(Hurd, D.J.).  Under this rule, however, costs are not allowed if they cannot be attached to the advancement of a specific claim, or if they are so general that they could be placed under the umbrella of overhead or office expense. Marshall v. State of New York Div. of State Police, 31 F. Supp.2d 100, 110 (N.D.N.Y. 1998).

On this motion, Plaintiff submits a number of documents, none of which itemize the costs for which she seeks reimbursement.  The Notice of Application For Prevailing Party Attorney Fees, dkt. 163, which is unsigned, does not indicate the amount of attorneys' fees or costs that Plaintiff seeks.  The 2 1/4 page Memorandum of Law similarly does not

13

itemize the fees or costs sought.  Attorney Zucker's affirmation  submitted with the motion,

dkt, # 163-1, merely provides with regard to costs:

> 29.   Attached, as Exhibit E is a report showing that plaintiff
>        reasonably spent $10,555.43 in necessary litigation expenses.
>        These include expert witness fees and other litigation related
>        costs.

> 30.   Supporting documents are attached as Exhibit F.

Exhibit E is a computer printout of some kind that has dates in the left hand column

under a description of some sort, a person or entity's name in the center column, and what

appears to be several dollar amounts in the right hand column.  For example, the first

entry appears under the description "Travel In State."   The right column has the date

"9/24/2008," the center column states "Cliff Zucker," and right column has the following

numbers each vertically listed on top of each other: "-1,624.98, -5.90, -17.66, -2.43."

It is unclear whether Attorney Zucker incurred travel expenses on 9/24/08 in the amount of

$1,650.77 (the total amount of the numbers corresponding with this entry), whether the

entry means something else, or whether the expense was even incurred in relation to this

case.  There are similar entries for "Crown Plaza," "Holiday Inn Express," 11 entries for

"Nina Loewenstein," 4 entries for "Shalimar Express," 1 for "Stewarts," and 11 entries with

no date and name but with several numbers in the right hand column.  There is no

explanation found anywhere in Plaintiff's documents as to how to interpret this document,

and Exhibit F, which is simply a compilation of 84 pages of receipts, provides the Court

with no further explanation.  The Court declines the invitation to weed through the two

documents in an attempt to match receipts with a computer entry in an attempt to make

some semblance of Plaintiff's application.

In his Reply Affirmation, Attorney Zucker contends that one admittedly confusing entry on Exhibit E occurs because the bookkeeper mistakenly paid IOD Incorporated twice for medical records (at a cost of $110), but that Exhibit E contains a credit for $110.   The Court fails to see where on Exhibit E a credit to IOD Incorporated in the amount of $110 appears.  Attorney Zucker also argues in reply that hotel accommodations for Plaintiff were required during the trial because she could not make it to court every day from her home because she does not drive, but there is no affidavit from Plaintiff indicating that she could not make this trip, how far the trip was, or whether there was another person who could have transported her to court.  Moreover, the entries for the two hotels, Crown Plaza and Holiday Inn Express, are for the same date (3/23/11) and it is unclear from Exhibit E the amount that was charged for these hotels, on what dates the charges were incurred, and on what dates Plaintiff stayed in each hotel during this short trial.  Plaintiff has failed to meet her burden of demonstrating that these expenses were related to and necessitated by the litigation, or that the expenses were reasonable.  Therefore, the motion to tax the majority of these undecipherable costs to Defendant is denied.

What the Court can decipher from the papers is that Plaintiff spent $350 for the filing fee in this action; paid $20 for a process server; paid $1,615.65 for an expert witness; paid a stenographer $2210 for transcripts of depositions; and paid the Court stenographer $4,616.35 for expedited trial transcripts.  These fees, with the exception of the expedited transcripts from the Court stenographer, are reasonable, necessary for the litigation, and properly established.   With regard to the expedited transcripts, these were ordered after Plaintiff prevailed at trial and were for the purpose of opposing Defendant's motion for a new trial.  A more frugal and reasonable procedure, and one that should have been

employed because it was likely that Defendant would be responsible for the costs of the

transcripts, would have been to order the transcripts at the "ordinary" rate of $3.65  per

page and ask for an adjournment of the motion pending receipt of the transcripts. The

Court awards the costs of the trial transcripts at the ordinary rate, which, for 911 pages,

equates with $ 3,325.15.   Therefore, costs are taxed to Defendant in the amount of

$7,520.80.

## III.  CONCLUSION

Based upon the reasons set forth above, Plaintiff is awarded attorneys's fees in the

amount of $101,641.05 and costs in the amount of $7,520.80 to be paid by Defendant.

**IT IS SO ORDERED**

**Dated:** February 16, 2012

Thomas J. McAvoy
Senior, U.S. District Judge

16